UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
             :

GEMINI INSURANCE COMPANY,    :
             :
           Plaintiff,    :
             :    17cv8963
     -against-       :
             :    <u>OPINION & ORDER</u>
TITAN CONSTRUCTION SERVICES,  :
LLC, *et al.*,          :
             :
          Defendants.  :
             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Gemini Insurance Company ("Gemini") brings this declaratory judgment

action against Titan Construction Services, LLC ("Titan") and Hudson View Gardens, Inc.

("Hudson View," and together with Titan, "Defendants").  Gemini seeks a declaratory judgment

that an insurance coverage exemption terminates its obligation to continue defending or to

indemnify Defendants in a state court negligence action brought by an injured construction

worker.[1]  Defendants bring counterclaims for a declaratory judgment that Gemini must provide

continued defense and indemnification coverage.  Following a two-day bench trial, this Court

makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil

Procedure 52.

<u>BACKGROUND</u>

        This action arises out of a state court lawsuit brought by Santos Mejia, a

construction worker injured at a Hudson View renovation project in November 2016 (the "State

Action").  (<u>See</u> Complaint, ECF No. 1 ("Compl."), ¶ 10; Proposed Joint Pretrial Order, ECF No.

---

[1]      Gemini dropped its claim for rescission of the insurance policy prior to trial.

68 ("JPTO"), at 3; P-55.)  Hudson View impleaded Titan, the project's general contractor, as a

third-party defendant in May 2017.  (See Compl. ¶ 14; JPTO at 3.)  Gemini agreed to defend

Titan, its insured, in the State Action.  (See Compl. ¶16; JPTO at 3; D-ZZ.)  In September 2017,

Gemini learned that Mejia was allegedly a Titan employee on the day of his accident,

purportedly bringing the injury within the scope of a coverage exemption.  Gemini then

disclaimed coverage in October 2017 and this declaratory judgment action ensued.

I.     The Hudson View Project and Titan's Retention as General Contractor

       Hudson View manages Hudson View Gardens, a 15-building cooperative

apartment complex located at 116 Pinehurst Avenue in Manhattan, New York.  (Trial Tr. at 176

(Edralin); D-HHH.)  In 2016, Hudson View commenced a façade renovation project and

solicited bids for contractors through its architect, Architectural Preservation Studio ("APS").

(Trial Tr. at 178 (Edralin).)  On APS's recommendation, Hudson View awarded Titan the $6.9

million contract.  (Trial Tr. at 178–79 (Edralin); D-HHH.)  Titan was founded around 2006 or

2007 by two brothers—Juan and Jose Garcia.  (Trial Tr. at 282–83 (Garcia).)  The renovation

project involved a full roof replacement, exterior waterproofing and restoration, asbestos

removal, and window restoration.  (Trial Tr. at 285 (Garcia).)  Juan Garcia testified that Titan has

no work force and pays other companies or subcontractors to provide laborers for its projects.

(Trial Tr. at 333–35 (Garcia).)

       Hudson View and Titan executed a contract in early May 2016 (the "Hudson

View Contract").  (Trial Tr. at 286–87 (Garcia); P-2.)  The Hudson View Contract required Titan

to purchase insurance in New York that, among other things, would provide coverage for

"[c]laims for damages because of bodily injury . . . [to] the Contractor's employee [or] . . . any

person other than the Contractor's employees . . . ."  (D-PP)  The Hudson View Contract also

2

required that the insurance policy include "[a]n endorsement naming . . . Hudson View Gardens, Inc. . . . as [an] additional insured[] . . . ." (D-PP (second ellipsis in original).)

Titan procured liability insurance from Gemini as required by the Hudson View Contract (the "Gemini Policy"). The Gemini Policy was effective from April 13, 2016 to April 13, 2017. (P-1; Trial Tr. at 32 (Joanos).) In relevant part, the Gemini Policy's "Designated Ongoing and Completed Operations" exclusion schedule (the "Exclusion Provision") defines "excluded operations" as "[a]ny and all work performed by any insured except for the work below: [t]he executive supervision of work performed by others." (P-1 (emphasis added).) The Exclusion Provision then explains that "[t]his insurance does not apply to . . . '[b]odily injury' . . . arising out of or the result of the operations described in the schedule of this endorsement . . . ." (P-1.) Under the Gemini Policy's "Additional Insured Endorsement," Hudson View qualified as an "additional insured" entitled to coverage.[2] (P-1.)

Titan hired several subcontractors: JME, an asbestos removal company; Brenmac, a sidewalk shed installer; and Siplast, a roofing company. (Trial Tr. at 284, 287–88 (Garcia).) Each of these subcontractors attended one or more progress meetings. (P-10; P-12.) At a progress meeting on May 10, 2016, Hudson View asked Titan to submit a list of proposed subcontractors. (Trial Tr. at 182–84 (Edralin); P-10.) No list was ever submitted. (Trial Tr. at 184 (Edralin).)

Titan paid each subcontractor by check and issued 1099 tax forms to them. (Trial Tr. at 289 (Garcia).) Titan's subcontractors performed initial mock-up work on the site in May and June of 2016. (Trial Tr. at 287 (Garcia).) The project began in earnest in September 2016

---

[2] During summations, the parties informed the Court that they settled Hudson View's counterclaim concerning whether Gemini was initially obligated to provide defense coverage to Hudson View as an "additional insured." Gemini agreed to provide defense coverage for Hudson View in the State Action pending this Court's resolution of this lawsuit. (Trial Tr. at 449.)

and is scheduled for completion in September 2019.  (Trial Tr. at 178 (Edralin); Trial Tr. at 285 (Garcia).)

II.     <u>Garcia Contractor Corporation</u>

Sometime between August and September 2016, Santos Mejia began working on demolition and brick replacement at the Hudson View site.  (Trial Tr. at 221–22 (Mejia).) Gemini contends the applicability of the Exclusion Provision turns on who employed Mejia at the time of his accident.  Gemini claims that Mejia was a Titan employee, while Defendants assert that Mejia worked for a subcontractor, Garcia Contractor Corporation ("Garcia Contractor").

As a starting point, the parties dispute whether Garcia Contractor performed work at Hudson View.  Juan Garcia testified that Titan had previously worked on projects with Garcia Contractor and had retained Garcia Contractor to perform exterior waterproofing work at the Hudson View site.  (Trial Tr. at 290 (Garcia).)  Titan and Garcia Contractor executed a contract on September 1, 2016, two days after Garcia Contractor acquired a Certificate of Workers' Compensation Insurance.  (P-3; P-47.)  The foreman of the Hudson View project, Francisco Miralda, asserted at trial that Miguel Jose Perez—the principal of Garcia Contractor—hired him around 2013 and 2014, and that he worked for Garcia Contractor until approximately November 2017, when his present employer, MuCo, took over Garcia Contractor's responsibilities.  (Trial Tr. at 242, 247, 260 (Miralda).)  As further evidence that Garcia Contractor worked on the Hudson View project, Titan introduced cancelled checks and pay stubs for hundreds of thousands of dollars in payments tendered to Garcia Contractor.  (D-D; D-E; D-LL.)

Beyond Juan Garcia and Miralda's testimony and the limited documentation

discussed above, there is little evidence of Garcia Contractor's existence or its work on the Hudson View project. Jane Edralin, Hudson View's property manager, testified that despite working on the renovation project for several years, she had never heard <u>anyone</u> claim to be working for Garcia Contractor. (Trial Tr. at 188 (Edralin).) To Edralin's knowledge, no one from Garcia Contractor ever attended the regular progress meetings, nor do the meeting minutes reflect the company's presence, despite memorializing the attendance of other Titan subcontractors. (Trial Tr. at 181 (Edralin); P-10; P-12.) Further, though Titan used specific sign-in sheets for its subcontracted employees, no sign-in sheet for Garcia Contractor was produced. (Trial Tr. at 264 (Miralda); P-38; P-39; P-40.) Titan also represented at the May 10, 2016 progress meeting that its employees would wear Titan T-shirts, and both Miralda and the previous foreman, Javier Lama, were seen wearing the shirts. (Trial Tr. at 184–85 (Edralin); Trial Tr. at 259 (Miralda); P-10.) Titan produced 1099 tax forms for its subcontractors, but none for Garcia Contractor. (<u>See</u> Trial Tr. at 299–300 (Garcia); P-9.) Moreover, Miralda testified that he worked for Garcia Contractor since 2013 or 2014. (Trial Tr. at 247 (Miralda).) But Garcia Contractor did not file a certificate of incorporation until June 2016. (Trial Tr. at 289 (Garcia); P-4.) And finally, Perez—Titan's principal—did not testify at trial.

        Titan's apparent gaslighting comes into focus on the purported Garcia Contractor employees relevant to this case—Miralda and Mejia. Miralda had no Garcia Contractor email address and communicated exclusively on the Hudson View project using a Titan email address. (Trial Tr. at 244, 260 (Miralda); P-12.) His signature block stated that he was a "Site Supervisor" for Titan Construction and included Titan's physical address. (P-28.) Miralda attended a progress meeting on July 28, 2016, where he was identified as being affiliated with Titan. (P-12.) Neither Miralda nor any Titan personnel reached out to APS to correct the

meeting minutes. (Trial Tr. at 252 (Miralda) ("The first time you received one of these documents, did you email [APS] and said [sic], hey, guys, you got it wrong, I'm with Garcia Contractor Corp.? A. No, I don't [sic].").) Miralda also appeared at the July 2016 meeting over a full month before Titan retained Garcia Contractor, contravening Titan's "requirement" that subcontractors' employees would not be allowed on the job site before insurance had been provided. (Trial Tr. at 291 (Garcia); P-3; P-12; P-47.) And when the Hudson View board president praised Miralda's work in an email to Juan Garcia, Garcia made no effort to clarify that Miralda worked instead for Garcia Contractor, and even went so far as to explain the bonus system for "<u>our</u> employees." (P-17 (emphasis added).)

      The details of Mejia's employment are similarly sketchy. Mejia testified that he was hired as a construction worker three and a half years prior to his accident after a conversation with Miralda and an interview with Amador Garcia, another brother of Juan and Jose Garcia. (Trial Tr. at 212–13, 228, 231 (Garcia).) Juan Garcia asserted at trial that his brother Amador did not work for Titan at that time, but no affirmative evidence was introduced as to Amador's employer when Mejia was hired. (Trial Tr. at 304 (Garcia).) Like all purported Garcia Contractor employees, Mejia was paid in cash. (Trial Tr. at 238 (Mejia).) Amador Garcia made most of the payments, but on one occasion, Mejia went to Titan's office and was paid by Miralda. (Trial Tr. at 215, 234 (Mejia); Trial Tr. at 245–46 (Miralda).)

      Juan Garcia and Miralda both testified that Mejia was a Garcia Contractor employee. (Trial Tr. at 243 (Miralda); Trial Tr. at 400 (Garcia).) But once again, their behavior during the Hudson View project suggests otherwise. Mejia received two certificates of fitness displaying Titan's logo, providing Titan's phone number under the appropriate "contact number," and declaring that Mejia was fit to work on suspension scaffolds under Jose Garcia's or

a rigging foreman's supervision. (Trial Tr. at 215–16 (Mejia); Trial Tr. at 370–71 (Garcia); P-53.) Mejia also checked in each day at the worksite by signing "Titan Construction" attendance sheets. (Trial Tr. at 223–26 (Mejia); D-HH.) Critically, Mejia testified that Titan employed him. (Trial Tr. at 227 (Mejia).) He based that assertion on the fact that he received certificates of fitness from Titan and wore a Titan T-shirt at the job site. (Trial Tr. at 232 (Mejia).)

III.    Santos Mejia's Lawsuit and Gemini's Investigation

On November 10, 2016, Mejia was injured while working at the Hudson View site. (Trial Tr. at 227 (Mejia).) On January 12, 2017, Mejia sued Hudson View in New York state court, seeking to recover damages for his injuries and alleging that Hudson View's negligence and/or New York Labor Law violations caused his accident (the "State Complaint"). (P-55.) The pleading did not identify his employer or name Titan as a defendant. (P-55.)

Mejia also applied for workers' compensation and submitted his claim under an insurance policy issued to Titan by the New York State Insurance Fund ("NYSIF"). (Trial Tr. at 227 (Mejia); JPTO, Agreed Statement of Facts, ¶ 13.) On January 17, 2017, Titan wrote to NYSIF stating that Titan "[had] no knowledge of [Mejia's] current employer or employer on date of accident (11/10/2016)." (P-47; Trial Tr. at 311–12 (Garcia).) Mejia appeared for a Workers' Compensation Board hearing on June 9, 2017 and was awarded benefits. (JPTO, Agreed Statement of Facts, ¶ 16.)

Gemini assigned Jim Joanos to handle Titan's claim for Mejia's injury. (Trial Tr. at 29 (Joanos).) Joanos testified that he began his investigation around January 2017 into possible grounds for disclaimer, specifically because Gemini did not know who employed Mejia. (Trial Tr. at 33, 91 (Joanos).) Joanos repeatedly tried to contact Titan via telephone, emails, and in-person visits to Titan's office. (Trial Tr. at 33–35 (Joanos).) Joanos also reached out to

Mejia's attorney for information, but apparently never received a response to his initial questions. (Trial Tr. at 159, 160 (Joanos).) In a letter dated January 17, 2017—but not mailed to Titan until March 7, 2017—Gemini reserved its right to disclaim coverage based on the Exclusion Provision in the Gemini Policy. (Trial Tr. at 134 (Joanos); P-58.) Titan never responded to that letter. (Trial Tr. at 42 (Joanos).)

Joanos also retained Golden Eye Claims ("Golden Eye"), an independent insurance investigation firm, to pursue the matter. (Trial Tr. at 76–77 (Joanos).) On March 24, 2017—roughly six weeks after Gemini first acknowledged Titan's claim—Golden Eye filed a report with Joanos, indicating that a Golden Eye investigator had interviewed Juan Garcia on March 17, 2017 and was told that Mejia was employed by Garcia Contractor. (Trial Tr. at 77 (Joanos); P-59.) The Golden Eye report also stated that Miralda had confirmed Mejia's employment with Garcia Contractor. (Trial Tr. at 77 (Joanos); P-59.) Joanos testified that at that point, he had sufficient information as to Mejia's employment, which he memorialized in a claim note summary written over a month later on April 25, 2017. (Trial Tr. at 78, 118–20 (Joanos); D-ZZ.) On April 27, 2017, Joanos sent a letter to Garcia Contractor and its own insurance carrier—Hudson Specialty Insurance Carrier ("Hudson Specialty")—to pick up the claim. (Trial Tr. at 46–49 (Joanos); P-57.) On May 16, 2017, Hudson View impleaded Titan into the underlying state action, for which Gemini agreed to cover Titan's defense. (See Compl., ¶16; D-ZZ.)

On August 15, 2017, the Hudson Specialty representative covering Garcia Contractor advised Joanos that he could not verify Mejia's employer. (Trial Tr. at 81–82 (Joanos); D-VV.) One month later, Joanos received a copy of Mejia's Verified Bill of Particulars, stating that Mejia was a Titan employee. (Trial Tr. at 54, 143–44; P-56; P-76.) On

October 12, 2017, Joanos received a September 18, 2017 Notice of Decision from the New York State Workers' Compensation Board finding that Mejia was a Titan employee. (Trial Tr. at 57–58, 72 (Joanos); P-52.) The next day, Gemini officially disclaimed coverage pursuant to the Exclusion Provision in the Gemini policy. (Trial Tr. at 167–68 (Joanos); P-60.)

DISCUSSION

A. <u>Santos Mejia's Employer</u>

The parties spar over whether Mejia was an employee of Titan or an employee of Garcia Contractor. This question necessarily turns on whether Garcia Contractor may be considered a subcontractor distinct from Titan, or whether the two entities were one and the same.

As an initial matter, neither party points to any definition of "subcontractor" in the Gemini Policy, and consequently, the parties disagree over the proper definition under state law. Gemini contends that this Court should look to the 2010 Construction Industry Fair Play Act ("CIFPA"), New York Labor Law § 861-c(1), which sets out 12 criteria that must be satisfied for "[a] business entity . . . that may be a [sub]contractor under this section [to] be considered a separate business entity from the [general] contractor . . . ." N.Y. Lab. Law § 861-(c)(2). Importantly, a business entity is <u>presumed</u> to be an employee of the contractor—and not a separate subcontractor—unless <u>all</u> 12 criteria are met. N.Y. Lab. Law § 861-(c); <u>accord</u> <u>In re Barrier Window Sys., Inc.</u>, 53 N.Y.S.3d 222, 224 (N.Y. App. Div. 2017).

Defendants oppose application of the CIFPA standard, arguing that the law was intended primarily to deal with employee misreporting in connection with workers' compensation. But on its face, the law concerns situations involving "construction" work, defined as "reconstructing, altering . . . rehabilitation, repairing, renovating . . . any building,

structure, or improvement," N.Y. Lab. Law § 861-b(1). <u>Accord</u> <u>In re Barrier Window Sys., Inc.</u>, 53 N.Y.S.3d at 225. And Defendants' cited authorities for a simpler definition of "subcontractor" predate CIFPA by at least a decade.

Accordingly, this Court looks to the CIFPA criteria as guideposts. This Court need not engage in an exhaustive analysis of each of the 12 factors because a failure to satisfy any component is dispositive. As relevant here, CIFPA requires that a subcontractor must "perform[] services for the contractor under [its own] name." N.Y. Lab. Law § 861-(c)(2)(g). The documentary evidence produced at trial demonstrates <u>no</u> occasion on which Garcia Contractor performed work at Hudson View under its own name. Miralda—as foreman for the project—had no apparent Garcia Contractor email address, but rather used Titan's address in his signature block. (Trial Tr. at 244, 260 (Miralda); P-28.) Despite other subcontractors having their own sign-in sheets, there were no sheets for Garcia Contractor, and Mejia, a purported Garcia Contractor employee, used a <u>Titan</u> sign-in sheet. (P-38; P-39; P-40.) Moreover, Mejia's certification cards bore exclusively Titan information—there was no trace of his status as a Garcia Contractor employee. (P-53.) And fundamentally, the Hudson View site manager testified that <u>no one</u> ever represented themselves as a Garcia Contractor employee. (Trial Tr. at 188 (Edralin).)

This same pattern continues for another CIPFA dispositive factor—"the contractor does not represent the [subcontractor] as an employee of the contractor to its customers." N.Y. Lab. Law § 861-(c)(2)(k). The evidence demonstrates the opposite. When emailed about Miralda's performance, Juan Garcia characterized Miralda in no uncertain terms as one of "<u>our</u> employees." (P-17.) Miralda was always represented on the progress meeting minutes as being affiliated with Titan, and no effort was made to correct this designation. (P-10;

P-12; Trial Tr. at 252 (Miralda); Trial Tr. at 373 (Garcia).) Both Miralda and Mejia wore <u>Titan</u>

t-shirts at the construction site. (Trial Tr. at 225–26 (Mejia); Trial Tr. at 259 (Miralda).) And on

Mejia's certification cards, Juan Garcia—the principal of Titan—certified that Mejia was eligible

to work on scaffolding under <u>his</u> supervision and that <u>Titan</u> was the appropriate party to be

contacted. (P-53.)

       Juan Garcia and Miralda's attempts to explain away the obvious implications of

this documentary evidence were unconvincing. For example, when asked to address his failure

to correct the Hudson View board member's inference that Miralda was a Titan employee, Juan

Garcia only claimed: "I don't [sic] tell her Mr. Miralda is my employee either," flatly

contradicting his representation in the email. (Trial Tr. at 303 (Garcia); P-17.) Miralda claimed

that having a Titan email address served a "business purpose" of "[e]asy communication

between my office [sic]." (Trial Tr. at 255 (Miralda).) But that does not explain why Miralda

never had contact information unique to Garcia Contractor, or the fact that Miguel Perez—the

purported principal of Garcia Contractor—had no such information either. (Trial Tr. at 253

(Miralda) ("By the way, did Garcia Contractor have email? A. Not that I know. Did Miguel have

an email address? A. I always contact him by a phone call. You don't know if he had email? A.

No, I don't.").)

       Further, in rationalizing Miralda's notation as a Titan employee on the meeting

minutes, Juan Garcia claimed he was so designated because "[h]e's our subcontractor," an

answer that is at odds with APS's identification of other subcontractors at those meetings. (Trial

Tr. at 364 (Garcia); P-10; P-12.) Juan Garcia could not credibly explain his failure to note this

correction to APS personnel, saying he thought Miralda's designation was not "relevant." (Trial

Tr. at 373 (Garcia) ("[Y]ou didn't find it relevant that people thought Mr. Miralda was your

employee on a date before you executed a contract . . . with Garcia Contracting Corp.? A. No.").) Finally, Juan Garcia claimed that Mejia's certification cards—which bore <u>no</u> mention of Garcia Contractor—did not represent Mejia to be a Titan employee, but rather that he could "do the work <u>for</u> Titan." (Trial Tr. at 380–81 (Garcia).) This Court finds that testimony unpersuasive.

For the foregoing reasons, the preponderance of the evidence demonstrates (1) that Garcia Contractor never performed services at the site under its own name, and (2) that Titan frequently represented Garcia Contractor employees as its own employees to Hudson View personnel. Thus, this Court finds that Garcia Contractor is not a subcontractor and Mejia was a Titan employee.

Independent of the CIFPA factors, the evidence demonstrates that Titan played fast and loose with corporate formalities. The mere existence of a certificate of incorporation or a certificate of workers' compensation insurance does not prove Garcia Contractor actually worked at the Hudson View site. (<u>See also</u> Trial Tr. at 404–05 (admitting D-D, D-E, and D-LL <u>only</u> for the purpose of showing payments to Garcia Contractor, and <u>not</u> as evidence of the substantive work performed).) As previously noted, trial testimony suggesting that Garcia Contractor was an operating entity in 2013 is belied by the fact that it was not incorporated until June 2016. (Trial Tr. at 242, 247, 260 (Miralda); Trial Tr. at 289 (Garcia); P-4.) While a certificate of workers' compensation insurance is probative, the absence of other corporate documents, such as 1099 tax forms, was unexplained. (Trial Tr. at 299–300 (Garcia); P-9.) And the individuals who may have been able to shed light on Garcia Contractor's activities—namely, Miguel Perez or Amador Garcia—did not testify at trial.

At bottom, beyond a few pro forma documents and inconsistent testimony, the

preponderance of evidence demonstrates that Garcia Contractor never existed except on paper, and that Mejia was a Titan employee.[3]

## B. Duty to Defend

This Court's analysis does not end with a determination of who employed Mejia. That factual issue is only dispositive if it entitles Gemini to disclaim defense and indemnity coverage under the terms of the Gemini Policy.

The duty to defend is "exceedingly broad and distinct from the duty to indemnify." Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 140–41 (2d Cir. 2014) (citation and quotation marks omitted). In New York, "an insurer will be called upon to provide a defense whenever the allegations of the complaint [in the underlying injury action] suggest a reasonable possibility of coverage." Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 15 N.Y.3d 34, 37 (2010) (citation and quotation marks omitted). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 83 (2d Cir. 2006) (citation and quotation marks omitted).

"Courts addressing the contours of the duty to defend thus ask what the complaint alleges, not what the objective state of reality is." City of N.Y. v. Liberty Mut. Ins. Co., 2017 WL 4386363, at *7 (S.D.N.Y. Sept. 28, 2017). The duty to defend may endure "even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 90 (N.Y. 1991). "Any

---

[3]      Because this Court finds that Mejia was a Titan employee, it need not address Gemini's argument that the June 2017 Worker's Compensation Board hearing precluded Titan from re-litigating the issue of Mejia's employer. But even so, in view of the scarce details as to the reasoning adopted by the Worker's Compensation Board, this Court cannot say that an unreviewed administrative decision means that the issue was "litigated and actually decided in a prior proceeding." Philogene v. Duckett, 2018 WL 3946447, at *8 (S.D.N.Y. Aug. 16, 2018) (quotation marks omitted) (quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000)).

ambiguity as to the insurer's duty to defend is resolved in favor of the insured." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 144 (2d Cir. 2004).

However, "[t]he insurer's duty to defend is . . . not an interminable one, and will end if and when it is shown unequivocally that the damages alleged would not be covered by the policy." Sturges Mfg. Co. v. Utica Mut. Ins. Co., 332 N.E.2d 319, 323 (N.Y. 1975) (emphasis added); see also Stein v. N. Assurance Co. of Am., 617 F. App'x 28, 30 (2d Cir. 2015) (summary order); Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc., 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010).

> To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the [underlying] complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.

Frontier Insulation Contractors, Inc. v. Merch. Mut. Ins. Co., 690 N.E.2d 866, 869–70 (N.Y. 1997) (emphases added); see also Cincinnati Ins. Co. v. Roy's Plumbing, Inc., 692 F. App'x 37, 38 (2d Cir. 2017) (summary order).

In assessing whether an insurer has carried this heavy burden, a court must "first look to the language of the policy." Selective Ins. Co. of Am. v. Cty. of Rensselaer, 47 N.E.3d 458, 461 (N.Y. 2016). The threshold question, as a matter of law, is whether the insurance policy is unambiguous, or put another way, whether it is subject to only one reasonable interpretation—that proposed by the insurer. Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 465–66 (2d Cir. 2010). A "contract is unambiguous if the language it uses has a definite meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Selective Ins. Co. of Am., 47 N.E.3d at 461 (citation and quotation marks omitted). Policy exclusions are

subject to strict construction, and where ambiguous, must be read narrowly and in favor of the insured.  See Auto. Ins. Co. of Hartford v. Cook, 850 N.E.2d 1152, 1156 (N.Y. 2006); Westview Assocs. v. Guar. Nat'l Ins. Co., 740 N.E.2d 220, 223 (N.Y. 2000).

As an initial matter, this Court must determine how to interpret the operative phrases "executive supervision" and "others," neither of which are expressly defined in the policy.  These terms must be given their "plain meaning."  Ellington v. EMI Music, Inc., 21 N.E.3d 1000, 1003 (N.Y. 2014).  Bearing that in mind, "executive," is defined as "having administrative or managerial responsibility."  See Merriam-Webster (online ed.).  "Others" is afforded its common sense interpretation of meaning someone other than the insured—here, Titan.  Thus, the Exclusion Provision concerns situations where Titan is overseeing or directing the work of non-Titan employees.

Gemini focuses on the phrase "executive supervision" in isolation and fails to explain how that phrase works in conjunction with the Exclusion Provision's other language.  Following trial, Gemini now urges this Court to apply the Exclusion Provision in either one of two ways—(1) that the injury is not covered because Mejia was a Titan employee, and therefore was not being "executive[ly] supervis[ed]"; or (2) that the injury is not covered because Mejia himself was not executively supervising anyone at the time of his accident.  Proposing alternative interpretations of the Exclusion Provision suggests the provision is ambiguous.  But at bottom, Gemini contends that the Exclusion Provision conditions coverage on the injured party's employer or work.  However, the Exclusion Provision makes no such express limiting statement.

It is a "fundamental rule of contract interpretation that a court must strive to give meaning to every sentence, clause, and word."  N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 116 (2d Cir. 2010) (citation and quotation marks omitted).  Read in its

entirely, the Exclusion Provision stipulates that "[t]his insurance does not apply to . . . '[b]odily injury' . . . . arising out of or the result of [any insured's work except for] [the executive supervision of work performed by others] . . . ." (P-1 (emphases added).) Critically, Gemini glosses over the connecting phrase "arising out of or the result of . . . ." In New York, "[t]he words 'arising out of' have 'broader significance' . . . and are ordinarily understood to mean originating from, incident to, or having connection with . . . ." Maroney v. N.Y. Cent. Mut. Fire Ins. Co., 839 N.E.2d 886, 889 (N.Y. 2005) (citation and quotation marks omitted) (alterations and ellipsis in original). This phrase cannot be ignored, and read in context, it contemplates only a loose causal connection between the injury at issue and Titan's work as an executive supervisor. See, e.g., JA Apparel Corp. v. Abboud, 568 F.3d 390, 405 (2d Cir. 2009) (explaining how New York courts counsel against the adoption of an interpretation that will render a part of the contract "surplusage").

Accordingly, this Court determines that the Exclusion Provision requires that a covered injury need only result in some way from Titan's high-level supervision of others at the worksite, not that the injured worker be a non-Titan employee or himself engaged in executive supervision. This interpretation comports with this Court's obligation to "construe exclusion provisions narrowly and in favor of coverage." D.C. USA Operating Co., LLC v. Indian Harbor Ins. Co., 2007 WL 945016, at *8 (S.D.N.Y. Mar. 27, 2017) (quoting Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115–16 (2d Cir. 1995)). And "where contract language is unambiguous, the court looks no further than the four corners of the document to determine the intention of the parties." Compagnia Importazioni Esportazioni Rappresentanze v. L-3 Commc'ns Corp., 703 F. Supp. 2d 296, 309 (S.D.N.Y. 2010). Accordingly, Gemini has failed to

carry its substantial burden to show that "the exclusion is subject to no other reasonable interpretation." City of N.Y., 2017 WL 4386363, at *8 (citation and quotation marks omitted).

This Court next considers whether the allegations in the State Action "cast the pleadings wholly within [the] exclusion." Beazley Ins. Co. v. Ace Am. Ins. Co., 150 F. Supp. 3d 345, 351 (S.D.N.Y. 2015) (citation and quotation marks omitted). Gemini also falls short on this prong. In relevant part, the complaint alleges:

- That "Titan Construction Services was hired and/or retained" to perform work at the Hudson View construction site. (P-55.)

- That "[Mejia] was engaged in the performance of construction, renovation, demolition, painting, repair and/or alterations at said premises." (P-55.)

- That "on November 10, 2016, while . . . Mejia was lawfully and carefully working on a ladder at said premises, he was caused to fall from said ladder by reason of the negligence of the defendant [and/or] its agents . . . in the ownership, operation, direction [or] supervision . . . of the said premises." (P-55 (emphases added).)

- That "the defendant [or] its agents . . . were negligent . . . in the . . . supervision . . . of the said premises." (P-55.)

Critically, there is no allegation regarding what caused Mejia's accident. Broadly construed, the allegations leave open the possibility that regardless of who employed him or what he was doing at the time, Mejia's injury may have been causally connected to Titan's work as an executive supervisor. Put another way, though Mejia, and by extension, Miralda, were Titan employees, that fact does not mean that Titan's supervision of other subcontractors did not play a role in Mejia's injury. This ambiguity must be resolved in Titan's favor. See MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011) ("Doubts are resolved in favor of the insured."); see also Kingsway Realty, LLC v. Gemini Ins. Co., 2019 WL 1099751, at *4 (S.D.N.Y. Mar. 8, 2009) (holding that the duty to defend persists so long as the allegations "potentially give rise to a covered claim" (citation and quotation marks omitted)).

17

Thus, this Court cannot conclude that "there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." Cont'l Cas. Co., 2010 WL 2834898, at *2 (emphasis added). And once this Court has determined that the Exclusion Provision's application is intertwined with the merits of the State Action, it cannot consider any extrinsic evidence in relieving Gemini of its duty to defend. See Int'l Bus. Machs. Corp., 363 F.3d at 148 (stating that a court may only look to extrinsic evidence in determining the duty to defend where the evidence is "unrelated to the merits of [the] plaintiff['s] action" (citation and quotation marks omitted)); see also City of N.Y., 2017 WL 4386363, at *15 (same).

To be sure, Titan misrepresented the true nature of its work at the Hudson View site—indeed, the preponderance of the evidence demonstrates that Titan and Garcia Contractor are essentially the same enterprise. But that fact is only legally significant if the Gemini Policy explicitly bars coverage on that basis. Gemini fails to point to any provision of the Gemini Policy expressly prohibiting Titan from using its own employees on a covered project. And as discussed above, Mejia's status as a Titan employee does not unambiguously bring his injury within the scope of the Exclusion Provision.

For the foregoing reasons, this Court rules that Gemini has not met its heavy burden to disclaim defense coverage and is obligated to continue defending Defendants in the State Action.

C. Duty to Indemnify

"[I]t has long been well-established . . . that a liability insurer may bring an action for a declaratory judgment against the parties in an underlying lawsuit involving its insured without waiting for the underlying action to proceed to judgment." Empire Fire & Marine Ins. Co. v. Elrac, Inc., 2006 WL 3734308, at *2 (S.D.N.Y. Dec. 18, 2006). However, when the duty

to indemnify "necessarily depend[s] on the resolution of one or more issues to be determined in the [s]tate [a]ction[]," a declaratory judgment on that duty is premature. Westport Ins. Corp. v. Hamilton Wharton Grp., Inc., 2011 WL 724737, at *4 (S.D.N.Y. Feb. 23, 2011); see also Vill. of Sylvan Beach, N.Y., 55 F.3d at 115–16 ("[I]f there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the issue of indemnification [is left] to be settled after establishment of the insured's liability."); Specialty Nat'l Ins. Co. v. English Bros. Funeral Home, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) ("[U]ntil the underlying action is decided, dismissal of an insurance company's declaratory judgment action for indemnity is appropriate.").

What caused Mejia's accident and who was responsible have not yet been established in the State Action. And without any such finding, this Court cannot declare whether Gemini will ultimately be obligated to indemnify Titan or Hudson View. See, e.g., Lafarge Can. Inc. v. Am. Home Assurance Co., 2018 WL 1634135, at *7 (S.D.N.Y. Mar. 31, 2018) (noting that "two records are being developed for different purposes at present—insurance coverage here, and liability in [the underlying action]," discouraging the court from creating "overlapping, and possibly inconsistent, factual records" that could "create friction with the [underlying] court[]").

Accordingly, this Court dismisses all parties' claims for declaratory judgments on the duty to indemnify as premature. See, e.g., Bhd. Mut. Ins. Co. v. Ludwigsen, 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018) ("[N]o liability has been assessed against Defendant, and therefore any claim regarding indemnification is not ripe for adjudication."); Westport Ins. Co., 2011 WL 724737, at *4–5 (dismissing indemnification claims as premature based on unresolved state court issues); N. River Ins. Co. v. ECA Warehouse Corp., 568 N.Y.S.2d 71, 72 (N.Y. App. Div. 1991) ("Since resolution of the second issue upon which plaintiff seeks

declaratory relief, i.e., whether it is required to indemnify defendant, depends upon resolution of the underlying action, that portion of the complaint which seeks such relief must be dismissed as premature.").

D.  Attorneys' Fees

Defendants seek an award of attorneys' fees in connection with litigating this action.  "Under New York law, it is well settled that an insured cannot recover his legal expenses in a controversy with a carrier over coverage, even though the carrier loses the controversy and is held responsible for the risk."  Employers Mut. Cas. Co. v. Key Pharms., 75 F.3d 815, 824 (2d Cir. 1996) (per curiam) (citation and quotation marks omitted).  However, the New York Court of Appeals has articulated a common law exception to this rule: "[A]n insured may recover attorneys' fees and costs when it has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations."  Liberty Surplus Ins. Co. v. Segal Co., 420 F.3d 65, 67 (2d Cir. 2005) (citation and quotation marks omitted) (emphasis added); accord Mighty Midgets, Inc. v. Centennial Ins. Co., N.E.2d 1080, 1085 (N.Y. 1979).  But New York courts have also cautioned that this exception is to be applied "narrow[ly]," Liberty Surplus Ins. Co., 420 F.3d at 67 (emphasis added), and generally, "[t]he question of how much to award as attorneys' fees and costs is entrusted to the sound discretion of the court," Suchodolski Assocs., Inc. v. Cardell Fin. Corp., 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008); accord Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996).

To the extent Defendants parried Gemini's effort to disclaim its duty to defend, and obtained the declaratory relief they sought in that respect, they may be deemed to have "prevailed."  That may entitle them to an award of attorneys' fees.  U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 822 N.E.2d 777, 780 (N.Y. 2004); Westport, 2011 WL 724737, at *5.

However, Defendants' arguments were largely rejected by this Court. For example, Defendants punted on the issue of the Exclusion Provision's interpretation and failed to explain how the provision was "ambiguous." Defendants also failed to prove that Mejia was a Garcia Contractor employee. This case proceeded to trial because Titan insisted that Garcia Contractor employed Mejia and performed subcontracting work on the Hudson View project. But Titan, in conjunction with Hudson View, offered no convincing evidence of that fact at trial. Finally, the evidence revealed that Titan was less than forthright in its representations to its insurer after Mejia's accident.

Accordingly, in formulating any application for fees, Defendants would be well advised to understand that this Court will not award fees for attorney time and resources expended on arguments that were neither accepted by this Court nor played any role in this Court's ruling for Defendants. Any such fee application must be filed within 14 days.

<u>CONCLUSION</u>

For the foregoing reasons, Gemini's claims for a declaratory judgment are denied and Defendants' counterclaims for a declaratory judgment on the duty to defend are granted. In all other respects, Defendants' claims are denied. The parties are directed to submit a proposed judgment within seven days. The Clerk of Court is directed to mark this case as closed.

Dated: August 27, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.